UNITED STATES of America,

v.

Marvin MANDEL et al.

Crim. No. HM75–0822.

United States District Court,
D. Maryland.

Jan. 30, 1976.

Jervis S. Finney, U. S. Atty., D. Md., Asst. U. S. Attys. Barnet D. Skolnik, Ronald S. Liebman and Daniel J. Hurson, for United States.

Arnold M. Weiner, Baltimore, Md., for Marvin Mandel.

William G. Hundley, Washington, D. C., for W. Dale Hess.

Thomas C. Green, Washington, D. C., for Harry W. Rodgers, III.

Michael E. Marr, Baltimore, Md., for William A. Rodgers.

Norman P. Ramsey, Baltimore, Md., for Irvin Kovens.

Joseph A. DePaul, College Park, Md., for Ernest N. Cory, Jr.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

On November 24, 1975, the Grand Jury for the District of Maryland returned a 24-count indictment against the defendants herein, four of those counts charging them with engaging in patterns of racketeering activity prohibited by 18 U.S.C. §§ 1961, 1962 and 1963. Pursuant to the provisions in 18 U.S.C. § 1963(b), counsel for the government have petitioned the Court to enter an order to restrain, pending final disposition of this case, the transfer or other disposition by the defendants of any property or other interests which would be subject to forfeiture upon conviction of the defendants under 18 U.S.C. § 1963(a). Each defendant has filed a brief answer which opposes the entry of such an Order. The sole question before the Court is whether the imposition of such an Order in this case, and at this time, would be appropriate. For the reasons stated below, the Court concludes that it would not.

Counts 21 and 23 of the indictment in substance allege that defendants Marvin Mandel, W. Dale Hess, Harry W. Rodgers, III and William A. Rodgers either acquired and maintained an interest in or conducted the affairs of the Security Investment Company through a pattern of racketeering activity in violation of 18 U.S.C. § 1962. Count 24 in substance charges that defendants W. Dale Hess, Harry W. Rodgers, III, William A. Rodgers, Irvin Kovens and Ernest N. Cory, Jr., conducted the affairs of the Marlboro Race Track (Southern Maryland Agricultural Association, Inc.) through a pattern of racketeering activity in viola-

tion of 18 U.S.C. § 1962. Section 1963(a) establishes criminal penalties for the violation of § 1962 which include a mandatory forfeiture provision:

Whoever violates any provision of section 1962 . . . shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962. 18 U.S.C. § 1963(a)

Section 1963(b), under which the government moves for the present Order, provides:

In any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including, but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper.

Pursuant to § 1963(b), counsel for the government have filed a petition seeking an order

restraining any and all defendants in this case, and their agents, attorneys, or those persons in active concert or participation with them, from, directly or indirectly, transferring, selling, distributing, or otherwise disposing or changing the present status of, any property or other interest held by any such defendant in any enterprise listed in paragraphs 2 through 4 above.

The enterprises referred to are the Security Investment Company and the Marlboro Race Track (Southern Maryland Agricultural Association, Inc.). The property or other interests referred to are not otherwise identified in the petition. Nor is the indictment much more specific. Defendant Mandel's alleged interest in the Security Investment Company is described in Count 21 only as a "financial interest of substantial value". Count 23 describes the property allegedly subject to forfeitures as the respective "partnership interests" in the Security Investment Company of W. Dale Hess (9%), Harry W. Rodgers, III (16%), and William A. Rodgers (16%). Count 24 refers to the "stock interests" in the Southern Maryland Agricultural Association, Inc., allegedly held by defendants W. Dale Hess, Harry W. Rodgers, III, William A. Rodgers, Irvin Kovens and Ernest N. Cory, Jr.

Defendants Mandel and Kovens expressly deny owning any of the interests described above; defendants Hess and Harry W. Rodgers, III do not concede that they own any of the interests described above; and defendants Cory and William A. Rodgers deny that they have any interest "subject to forfeiture".

The defendants have urged on a number of grounds that the imposition of the order the government seeks would be prejudicial and in violation of their constitutional rights. First, they argue that the entry of such an order without a prior hearing would constitute a deprivation of their property without due process in contravention of the Fifth Amendment. Defendants also argue that even if a hearing were had, the entry of such an order would constitute a prejudicial pretrial determination of "probable guilt" which would hamper the preparation of their defense and violate the presumption of innocence. The defendants suggest that a finding that the property is "subject to forfeiture" may be made only if proved beyond a reasonable doubt at a full trial.

None of the reported opinions concerned with criminal actions brought under § 1961 and § 1962 have discussed the matter of pretrial restraining orders authorized under § 1963(b).[1] Nor have any of the unreported decisions of district courts to which the Court has been

1. *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975); *United States v. Parness*, 503 F.2d 430 (2d Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775 (1975); *United States v.*

referred by government counsel addressed themselves to the issues that the defendants have raised here.[2] The legislative history of this provision is similarly unenlightening.[3] While forfeiture proceedings are not unknown in federal law, they typically proceed *in rem* against an object such as a car or a gun which has been the fruit or the instrumentality of a crime. The Court has not been referred to any proceeding in the federal criminal law comparable to § 1963(b), which proceeds against the defendant himself *in personam*.

■ The Court does not find it necessary to reach the constitutional issues raised by the defendants. The Court is of the opinion that the entry of a restraining order at this time in the light of the nature of the case and the particular set of facts which it involves would be substantially prejudicial to the defendants. The Court also does not find it necessary to hold a hearing on the issue, as it appears that the allegations contained in the government's petition, even if taken as true, would be insufficient to justify the issuance of the order at this time.

■ The prejudicial impact of the entry of such an order perhaps can be demonstrated best by focusing on what would have to be shown at a hearing to render such an order appropriate. In a civil trial, a preliminary injunction is sought only as an extraordinary remedy to preserve the status quo of the parties pending the final determination of their respective rights. In determining whether a preliminary injunction should issue in a civil case, a court usually considers four factors: (1) Has the petitioner made a strong showing that he is likely to prevail on the merits at trial? (2) Has irreparable harm in the absence of relief been shown? (3) Would the issuance of the injunction substantially harm other parties interested in the proceedings? and (4) Where does the public interest lie? *See Conservation Council of North Carolina v. Costanzo,* 505 F.2d 498, 502 (4th Cir. 1974); *First Citizens Bank and Trust Co. v. Camp,* 432 F.2d 481 (4th Cir. 1970). While these standards have been developed for use in civil cases, the Court is of the opinion that they may provide some guidance as to the minimal requirements for the entry of a pre-conviction order in a criminal case.

■ The first element of the test in civil cases can be met by a showing that the petitioner will be likely to prevail on the merits at trial. *See* 7 Moore, Federal Practice, ¶ 65.04[1]. While it is not necessary for the petitioner to meet a specific burden of proof, such as "preponderance of the evidence", it is well-settled that a showing must be made which demonstrates by specific evidence that there are substantial grounds rais-

---

*White,* 386 F.Supp. 882 (D.Wis.1974); *United States v. Amato,* 367 F.Supp. 547 (S.D.N.Y. 1973).

2. *United States v. Parness,* No. 73–CR–157 (S.D.N.Y.1973); *United States v. Bufalino,* No. 73–175 (W.D.N.Y.1973); *United States v. White,* 386 F.Supp. 882 (D.Wis.1974); *United States v. Scalzitti,* No. 74–276 CR (W.D.Pa. 1974); *United States v. Hawes,* No. 74–65–MAC (M.D.Ga.1974); *United States v. Fox,* S–CR–75–63 (S.D.Ill.1974); *United States v. Salinas,* No. SA–75–CR–248 (W.D.Tex.1975). The United States Attorney has furnished copies of the indictments and Orders entered in the majority of these cases to the court and to the defendants.

3. Chapter 96, Title 18, "Racketeer Influenced and Corrupt Organizations" was enacted into law by Title IX of the Organized Crime Control Act of 1970. Act of Oct. 15, 1970, P.L. 91–452, Title IX, § 901(a), 84 Stat. 941. The only references in the legislative history to 18 U.S.C. § 1963(b) are mere paraphrases of the provision. *See, e. g.,* S.Rep. No. 91–617, 91st Cong., 1st Sess. 160 (1969), and H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. (1970), reprinted in 2 U.S.Code Cong. & Admin.News, pp. 4007, 4033 (1970). *See also* Hearings on S. 30 and Other Measures Relating to Organized Crime Before the Subcommittee on Criminal Laws and Procedures of the Committee on the Judiciary, 91st Cong., 1st Sess. (1969); Hearings on S. 30 and Organized Crime Control Before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess. (1970).

ing a serious possibility that the petitioner will prevail on the merits. In the instant case, this standard would seem to require the government to demonstrate that it is likely to convince a jury beyond a reasonable doubt that the defendants are in fact guilty of the crimes charged, and in fact own the property or other interests which would then be subject to forfeiture. A mere indictment, which is *not* evidence but only the formal mechanism by which the government brings criminal charges, as support for a petition that contains no additional facts but only conclusory allegations, cannot meet that standard.

The Court is of the opinion that on the facts of this case, the order the government seeks would be incompatible with the presumption of innocence defendants enjoy until such time, if ever, as a jury finds them guilty beyond a reasonable doubt. A finding that the government would be likely to prevail on the merits at trial, which would appear necessary to enter such an order, is equivalent to a determination that defendants are likely to lose at trial. It constitutes a pretrial determination that the defendants are probably guilty, a determination which defendants reasonably might conclude would render a fair trial less likely. Further, a hearing would compel the defendants to defend themselves against the government's allegations. If they choose to speak, what they say may later be used against them at trial. If they choose to remain silent, that silence may be taken by the public as an admission of guilt, rather than as the mere exercise of the right to force the government to prove its charges without aid from the defendants.

The second element of the test in civil cases requires the government to demonstrate "irreparable harm" unless an injunction issues. The legislative history of the Organized Crime Control Act of 1970 makes it clear that Congress intended this provision to prevent preconviction transfers of property which would defeat the purposes of the mandatory forfeiture provision—those purposes being the taking away of interests in legitimate business from the hands of organized crime members and restoring them to legitimate hands. See note 3, *supra.* The Court concludes from the purposes of the legislation that the government need not prove irreparable harm independently from the actual or threatened transfer or disposition of any property which may be subject to forfeiture.

That conclusion, however, does not do away with the requirement that there be some showing that the defendants are doing, or are attempting to do, what the government seeks to have enjoined. *Cf. Cortright v. Resor,* 447 F.2d 245 (2d Cir. 1971). No allegation has even been made that any of the defendants are seeking to transfer or dispose of any property interests which may be involved in this case.

The third element of the test to be considered is whether the entry of the requested order would harm other parties. Persons other than those named as defendants in this case apparently own property or other interests in the enterprises listed in the indictment, but it does not appear from the record whether a court order restraining the transfer or other disposition of the defendant's alleged interests would impair the value or use of other parties' interests. The Court thus cannot say from the record whether or not third parties would be harmed.

The fourth element of the test takes into account the public interest. If the failure to enter the restraining order requested here would defeat the Congressional objective of removing legitimate business interests from criminal hands, the public interest would be served by the entry of such an order. As noted above, however, the determination of whether legitimate business interests are in "criminal" hands can hardly be made in advance of the actual trial of the charges in the indictment. Additionally, as already noted, there has been no allegation that the defendants are attempting to dispose of those interests. Conse-

**684**

quently, if the defendants are found guilty of violations of § 1962, one can only assume those interests will still be present to be forfeited and the Congressional purpose served.

Finally, a word is needed to clarify what the Court is holding today. The Court does not hold that § 1963(b) can never be invoked by the government. It is conceivable that the factors which have led to the conclusion here that the defendants would be prejudiced by the entry of this order might well be absent in different circumstances.

For the reasons stated above, the Court will deny the petition at this time. The Court intimates no opinion as to the possibility that the pendency of the petition may create a *lis pendens*.