UNITED STATES of America, Plaintiff,

v.

Joseph Anthony BELLO, Defendant.

Crim. No. 79-273-E.

United States District Court, S. D. California.

May 24, 1979.

Michael H. Walsh, U. S. Atty., Michael L. Lipman, Asst. U. S. Atty., San Diego, Cal., for the United States.

Howard B. Frank, San Diego, Cal., and Stephen V. Wilson, Beverly Hills, Cal. (argued), for defendant.

ENRIGHT, District Judge.

On April 18, 1979, Joseph Bello was indicted by a Federal Grand Jury for violation of 18 U.S.C. §§ 2, 1341, 1343, 1961, 1962(c), 1963, as well as other violations of federal law. Count 30 of that indictment alleges that Joseph Bellow was employed by and associated with MB Financial, Inc., and through that corporation engaged in a pattern of racketeering activity.

Included among the penalties for violations of the racketeering law is 18 U.S.C. § 1963(a), which provides for forfeiture of any interest or property operated or controlled in violation of the racketeering provisions. The forfeiture section also provides that the district court shall have jurisdiction to enter a restraining order in connection with any interest or property subject to forfeiture. 18 U.S.C. § 1963(b). The government seeks a restraining order enjoining Bello from selling, transferring or otherwise disposing of or encumbering the assets owned or used by Bello in connection with the operation of MB Financial, Inc. The order includes certain real estate, notably a residence at 4770 Jellet Street, San Diego.

An agent of the Internal Revenue Service has examined the records relating to the acquisition of the Jellet Street home and concludes that approximately $27,000 in investor money was used in the purchase of land and the construction of the house, and another $44,000 in investor funds was used to decorate and furnish the house. Further, Bellow is apparently in the process of transferring the house in payment for attorney fees. In late November 1978, Bello retained attorney Howard Frank and deeded the Jellet Street residence as payment for legal fees to Howard Frank and Armando Odorico. Odorico sold the property to one Joseph Matranga for a price equal to $123,000 plus payment of existing encumbrances. Part of the purchase price was a note from Matranga to Frank and Odorico secured by a trust deed on the property. The note was to be paid and the funds disbursed to Frank and Odorico on or about May 15, 1979.

In the middle of April 1979, Bello decided to replace attorney Howard Frank with Stephen V. Wilson. Wilson is to be paid from the proceeds of the note in favor of Frank and Odorico. Bello states that he will not be able to hire an attorney if there is any interference with the transfer of funds from the proceeds of the note. He contends that the restraining order would violate due process and the presumption of innocence and would operate as a pre-trial determination that he is guilty of racketeering. In addition, Bello argues that in the circumstances of this case a restraining order will violate his right to counsel.

I

The government has made a sufficient showing that the restraining order is necessary. The government contends that the assets which are the subject of the restraining order are those used by Bello in connection with MB Financial, Inc. and would be subject to forfeiture under 18 U.S.C. § 1963(a) were Bello found guilty of the racketeering charges. The government notes that the grand jury's indictment provides probable cause to believe Bello was involved in criminal activity. Further, Bello is attempting to transfer certain property in payment for attorney fees.

■ Defendant argues that the issuance of the restraining order constitutes a pretrial determination that he is guilty of racketeering and denies him due process of law. He relies on *United States v. Mandel*, 408 F.Supp. 679 (D.Md.1976), where the court refused to grant a restraining order upon a finding that it would substantially prejudice the defendant. The court observed that "the determination of whether legitimate business interests are in 'criminal' hands can hardly be made in advance of the actual trial . . . ." *Id.* at 683.

*Mandel* leaves few, if any, circumstances in which a restraining order might issue before trial.[1] This court believes that *Mandel's* reasoning emasculates the statute and renders it nearly useless. Moreover, this court disagrees that a restraining order constitutes a pre-trial determination of guilt. Instead, this court agrees with the court in *United States v. Scalzitti*, 408 F.Supp. 1014 (W.D.Pa.1975), which stated that the restraining order no more stripped defendant of the presumption of innocence than does

---

1. After trial, a restraining order would be unnecessary. If defendant were found innocent, the issue would be moot. If defendant were convicted, any assets used in connection with racketeering activities would be subject to immediate forfeiture.

the requirement that he post a bond for his release. *Id.* at 1015. The restraining order does not make a determination that defendant is a racketeer, but only freezes those assets to prevent dissipation pending a determination of guilt or innocence.

Even if the court were to accept the reasoning of *Mandel*, that case is distinguishable from the instant case. In *Mandel*, the court was concerned that freezing the assets in question would affect other people besides the defendant. The court noted that defendant had made no attempt to transfer or dissipate the assets. Moreover, no harm would result to any third party if the restraining order was not granted.

In contrast, in the instant case defendant is the only person directly affected by the restraining order. Defendant has attempted to transfer the Jellet Street residence, which the government contends was partially acquired with the funds of MB Financial, Inc. Further, if defendant were to dispose of these assets, and the assets were ultimately determined to be those of MB Financial, Inc., his action would harm not only the government but also the many investors in MB Financial, Inc.

## II

Defendant's next contention is that a restraining order will keep him from hiring an attorney and thus deprive him of his right to counsel. The case cited by defendant does not support his position.

In *United States v. Brodson*, 241 F.2d 107 (7th Cir.), *cert. denied*, 354 U.S. 911, 77 S.Ct. 1297, 1 L.Ed.2d 1428 (1957), the defendant was indicted for tax evasion and a jeopardy assessment was made, preventing him from using certain funds to hire an accountant to help him refute the charges. Defendant contended that the assessment and tax liens kept him from using his assets to prepare for trial and deprived him of the effective assistance of counsel.

The Seventh Circuit found that defendant's allegations that he would be deprived of the effective assistance of counsel were premature. The court found no case holding that a trial to be held in the future would not be a fair trial, thus dismissing the case without a trial. The court noted that it is difficult to forecast events at trial; an accountant might testify at trial or his testimony might not be necessary. Further, the court noted that defendant had been able to borrow money for his living expenses and it was possible that defendant might obtain funds for an accountant from such a source.

This court concludes that the proposed restraining order does not deprive Bello of counsel, but only of the attorney of his choice. Bello will still be entitled to court-appointed counsel if he has no means to hire an attorney. Bellow may not use assets which are allegedly those of MB Financial, Inc. to defend charges of racketeering.

Accordingly, the court grants the government's request for an order restraining defendant from transferring, encumbering or otherwise disposing of assets owned or used in connection with the ownership or operation of MB Financial, Inc.