UNITED STATES of America

v.

**Ronald Burnell BASSETT,
Clarence Meredith.**

Crim. No. M–85–0541.

United States District Court,
D. Maryland.

April 11, 1986.

Breckinridge L. Willcox, U.S. Atty., and Harvey Eisenberg, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Ronald Rubinstein, Kew Gardens, N.Y., for defendant Bassett.

Leslie A. Stein, Baltimore, Md., for defendant Meredith.

MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The defendants Ronald Bassett and Clarence Meredith have moved for an order exempting the fees they are paying their attorneys to represent them in this case

from forfeiture to the government pursuant to 21 U.S.C. §§ 848, 853, and 881 (Paper No. 416). The defendants contend that forcing their lawyers to forfeit their fees violates the defendants' constitutional right to counsel of choice; creates a potential conflict of interest between lawyer and client; undermines the attorney-client privilege and poses a threat to the adversary system (*id.*).

The government argues that the constitutional right to counsel of choice is a qualified right which must give way to the public interest if need be. Further, the government contends forfeiture does not bar defendants from paying their lawyers with assets earned through legitimate enterprises. Finally, the government asserts that the legislative history of the statute indicates Congress did not intend to exempt legal fees from the forfeiture provision (Paper No. 437 at 12–14).

### Factual Background

Defendants Ronald Bassett and Clarence Meredith have been charged with conducting a continuing criminal enterprise under 21 U.S.C. § 848 in connection with a conspiracy to possess and distribute heroin. Mr. Bassett was also charged with interstate travel in aid of distributing heroin, possession with intent to distribute heroin and distribution of heroin. Mr. Meredith was also charged with intent to distribute and distribution of heroin and income tax violations (Paper No. 261). On January 27, 1986, Assistant United States Attorney Ty Cobb advised counsel for both defendants by letter that the government intended to seek forfeiture after trial of the legal fees paid to them by these defendants in connection with this matter (Paper No. 416, Exh. 1).

As a result, both attorneys have requested the court to exempt their fees from forfeiture. The lawyers have indicated that their continued appearance in this case is conditioned on their fees being exempt from forfeiture (Paper No. 416, Rubinstein Affidavit, ¶ 5).

A hearing on this matter took place on April 3, 1986. For the reasons herein stated, the motion of the defendants will be granted.

### Legal Analysis

The Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1837 (Oct. 12, 1984), altered existing criminal forfeiture law so as to permit the government to obtain from convicted criminals those assets earned through certain illegal activities even if those assets a) have been transferred to third parties; and b) were transferred to third parties prior to conviction. In other words, the criminal forfeiture "relates back" to the commission of the illegal act which "gives rise to the forfeiture." (*Justice Department Guidelines on Forfeiture of Attorneys' Fees*, 38 *Crim.L.Rep.* No. 1, 3001 (hereinafter "*Justice Department Guidelines*")).

The relevant question here is whether the statute's third party forfeiture provisions apply to bona fide legal fees paid by the defendants to their attorneys. Few courts have yet had the opportunity to consider this question in light of the new criminal statute. Two courts which have examined it pursuant to the forfeiture provision of 18 U.S.C. § 1963(m), which is part of the Racketeer Influenced and Corrupt Organizations (RICO) statute and is identical to the forfeiture provision of the drug statute at issue here, have held that attorneys' fees and costs were exempt from forfeiture. *United States v. Ianniello*, S 85 Cr. 115 (CBM) slip op. (S.D.N.Y. Sept. 3, 1985) [Available on WESTLAW, DCTU database]; *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo.1985).

Another court in the Southern District of New York considered the issue in the context of a motion to quash a Rule 17(c) subpoena and also determined that attorneys' fees could not be forfeited to the government. *United States v. Badalamenti*, 614 F.Supp. 194 (S.D.N.Y.1985). In the case of *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985*, 605 F.Supp. 839, 849 n. 14 (S.D.N.Y.1985), *rev'd*

*on other grounds*, 767 F.2d 26 (2d Cir. 1985), the court in *dicta* in a lengthy footnote reached the opposite conclusion and said such fees were subject to forfeiture.

Several other courts, including the Fourth Circuit, indicated in *dicta* in decisions reached prior to the enactment of the new forfeiture statute, that if faced with the question at that time they might have permitted attorney fee forfeiture. *See United States v. Raimondo*, 721 F.2d 476, 478 (4th Cir.1983), *cert. denied, Bello v. United States*, — U.S. —, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); *United States v. Long*, 654 F.2d 911, 915–17 (3d Cir.1981). Apparently, however, this is a question of first impression in this District and in the Fourth Circuit.

### a) *Threshold Issue—Standing and Ripeness*

The defendants assert they have standing to challenge the government's intention to seek the forfeiture of the fees they pay to their lawyers (Paper No. 416, Memorandum at 2). The government has not addressed this issue.

■ Generally, a plaintiff cannot "rest his claim to (judicial) relief on the legal rights or interest of third parties." *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) *quoting Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). To establish standing, a party wishing to invoke the authority of the court must show he has suffered a real or threatened injury which is fairly traceable to the challenged action and able to be remedied by the court. *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 444 (D.Md.1985). Thus, when actions affecting a third party impact adversely on the rights of a party to the action, that party has standing to assert his own rights. *United States v. Rogers*, 602 F.Supp. at 1335 *citing Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975).

■ Here, the defendants assert their constitutional right to counsel of choice will be impaired if the government is allowed to force forfeiture of their attorneys' legal fees. Clearly, the defendants have standing to assert this claim.

■ Although not raised by the parties in the pleadings, the question also arises whether the case is sufficiently ripe for decision. Although the government has not actually instituted forfeiture proceedings against these lawyers, it has made it clear that it intends to do so. Moreover, the lawyers in this case have stated that their continued participation in this case is contingent upon their receiving a favorable determination of this matter now. Thus, the defendants face the possibility of being without counsel less than two months before going to trial on extremely serious charges with potentially severe penalties. Therefore, the adverse consequences to the defendants of the government's announced intention is immediate, not an ephemeral potentiality. The issue is ripe for immediate resolution and demands immediate attention from the court.

### b) *Statutes at Issue and Congressional Intent*

The relevant provisions of the applicable forfeiture statutes read as follows:

"§ 848. Continuing criminal enterprise
 (a) Penalties; forfeitures

 Any person who engages in a continuing criminal enterprise shall be sentenced to a term of ... and to the forfeiture prescribed in section 853 of this chapter; ....

§ 853. Criminal forfeitures

(a) *Property subject to criminal forfeiture*

 Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

 (1) any property constituting, or derived from, any proceeds the person

obtained, directly or indirectly as the result of such violations;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) *Meaning of term "property"*

Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

(c) *Third party transfers*

All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfei-

ture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section...." [1]

Arguably, § 853(c) may be read to reach a very broad class of persons as third party transferees. Fees paid to lawyers are not expressly exempted. Thus, bona fide fees paid to an attorney under the literal terms of the statute seemingly would be subject to forfeiture unless counsel was, as noted in the statute, "reasonably without cause to believe" the fees were so subject.

How is this standard of being "reasonably without cause to believe" to be measured in the case of attorneys? Is the attorney under a duty to inquire as to the source of each client's funds? Is the attorney on constructive notice that a client's funds may be subject to forfeiture if the client has been convicted in the past of drug or RICO offenses? Is indictment under § 848 or RICO sufficient to give an attorney reasonable cause to believe the funds may be subject to forfeiture? Because the statute is not clear on its face in this respect, one must look to the legislative history for further guidance. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

Unfortunately, the legislative history of the Comprehensive Crime Control Act does not provide bright illumination of Congressional intent in this regard.[2] It does, how-

---

**1.** 21 U.S.C. § 881 describes the types of property subject to forfeiture and will not be cited in full here.

**2.** Historically, forfeiture of personal goods and chattels was automatic under the common law following conviction of treason and some other felonies. Forfeiture was abolished by statute in 1790 during the first Congress. S.Rep. No. 225,

98th Cong., 2d Sess. 81–82 *reprinted in* 4 U.S. Code Cong. & Ad.News 3182, 3264–65 (1984). Criminal forfeiture was not reinstated until 1970 when Congress passed Title IX of the Organized Crime Control Act and Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (18 U.S.C. § 1963 and 21 U.S.C. § 848(a)(2)). *Id.* at 3265. It was these

ever, fully explain the intent of Congress in amending the statute, which was clearly to toughen the forfeiture provisions. Law enforcement authorities were apparently being thwarted, by fraudulent transfers to third parties, in attempts to obtain the lucrative proceeds of illegal drug and racketeering adventures. "No mechanism exists in current law to protect against improper transfers or concealment of assets at an earlier stage (before indictment or criminal information)." S.Rep. No. 225, 98th Cong., 2d Sess. 194 (hereinafter *Senate Crime Report*) *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3377. It was obvious to legislators that the then current statute was ineffective in reaching the proceeds of criminal activity.

> "[T]he criminal forfeiture provisions of the RICO and CCE statutes fail adequately to address the phenomenon of defendants defeating forfeiture by removing, transferring, or concealing their assets prior to conviction. Unlike civil forfeitures, in which the government's seizure of the asset occurs at or soon after the commencement of the forfeiture action, in criminal forfeitures, the assets generally remain in the custody of the defendant until the time of his conviction for the offense upon which the forfeiture is based. Only after conviction does the government seize the asset. Thus, a person who anticipates that some of his property may be subject to criminal forfeiture has not only an obvious incentive, but also ample opportunity, to transfer his assets or remove them from the jurisdiction of the court prior to trial and so shield them from any possibility of forfeiture.
>
> Currently, the only mechanism available to the government to prevent such actions is the authority to obtain a restraining order and this statutory authority is limited to the post-indictment period. Thus, even if the government is aware that a person is disposing of his property in anticipation of the filing of criminal charges against him, it has no

specific authority under the RICO or CCE statutes to obtain an appropriate protective order. Furthermore, even if the government is able to obtain a restraining order, should the defendant choose to defy it, he can effectively prevent the forfeiture of his property and face only the possibility of contempt sanctions for his defiance of the court's order. The important economic impact of imposing the sanction of forfeiture against the defendant is thus lost.

> Although current law does authorize the issuance of restraining orders in the post-indictment period, neither the RICO nor CCE statute articulates any standard for the issuance of these orders. Certain recent court decisions have required the government to meet essentially the same stringent standard that applies to the issuance of temporary restraining orders in the context of civil litigation and have also held the Federal Rules of Evidence to apply to hearings concerning restraining orders in criminal forfeiture cases. In effect, such decisions allow the courts to entertain challenges to the validity of the indictment, and require the government to prove the merits of the underlying criminal case and forfeiture counts and put on its witnesses well in advance of trial in order to obtain an order restraining the defendant's transfer of property alleged to be forfeitable in the indictment. Meeting such requirements can make obtaining a restraining order— the sole means available to the government to assure the availability of assets after conviction—quite difficult. In addition, these requirements may make pursuing a restraining order inadvisable from the prosecutor's point of view because of the potential for damaging premature disclosure of the government's case and trial strategy and for jeopardizing the safety of witnesses and victims in racketeering and narcotics trafficking cases who would be required to testify at the restraining order hearing.

statutes which were amended in 1984 through

the Crime Control Act. *Id.* at 3375.

The problem of pre-conviction dispositions of property subject to criminal forfeiture is further complicated by the question of whether, simply by transferring an asset to a third party, a defendant may shield it from forfeiture. In civil forfeitures, such transfers are voidable, for the property is considered 'tainted' from the time of its prohibited use or acquisition. But it is unclear whether, in the context of criminal forfeitures, the same principle is applicable so that improper pre-conviction transfers may be voided.

In sum, present criminal forfeiture statutes do not adequately address the serious problem of a defendant's pretrial disposition of his assets. Changes are necessary both to preserve the availability of a defendant's assets for criminal forfeiture, and, in those cases in which he does transfer, deplete, or conceal his property, to assure that he cannot as a result avoid the economic impact of forfeiture...."

*Senate Crime Report,* 195–96; *id.* at 3378–79 (footnote omitted).

**3.** This section is identical to 21 U.S.C. § 853(n). Section 18 U.S.C. § 1963(m) reads as follows:

(m)(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

The Senate Report further discusses at some length the purpose behind the amendment concerning third party transfers in the context of Section 1963(c) of the RICO statute. This section, as amended, is identical to the criminal forfeiture provision of § 853(c), and thus the discussion of the RICO amendment is instructive here. It reads in pertinent part:

"The purpose of this provision is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not 'arms length' transactions. On the other hand, this provision should not operate to the detriment of innocent bonafide purchasers of the defendant's property...."

*Senate Crime Report* at 200–01, *id.* at 3383–84.

Finally, the Senate Report discusses the mechanics of the third-party criminal forfeiture procedure as outlined in 18 U.S.C. § 1963(m).[3] The Report states:

(4) The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

(5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

"... [A] third party will prevail ... where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a *bona fide* purchase for value and had no reason to believe that the property was subject to forfeiture."

*Senate Crime Report* at 209, *id.* at 3392. A footnote to that passage, however, offers a somewhat contradictory caveat. "The provision should be construed *to deny relief to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions.* The standard for relief reflects the principles concerning voiding of transfers set out in 18 U.S.C. 1963(c), as amended by the bill." (Emphasis supplied). *Senate Crime Report* at 209, n. 47, *id.* at 3392.

### c) *Case Law Analysis*

In analyzing the legislative history of the statute in the context of a RICO forfeiture action, the court in *United States v. Rogers* reached the following conclusion:

"An attorney who receives funds in return for services legitimately rendered operates at arm's length and not as part of an artifice or sham to avoid forfeiture. Like the grocer compensated for the food he sells the defendant or the doctor paid a fee for healing the defendant's children, the lawyer is entitled to compensation for his services actually and legitimately rendered."

602 F.Supp. at 1348.

Likewise, in the *Ianniello* decision the court relied on its interpretation of the legislative history to reach the conclusion that "bona fide attorneys' fees paid to defense counsel who serve the defendants' needs within our adversary system were not intended to be forfeitable by Congress,

for it cannot be said that such fees were paid as part of an artifice or sham to avoid forfeiture." *Ianniello*, slip. op. at 8–9.

The court in the *Badalamenti* decision acknowledged that a literal reading of 18 U.S.C. § 1963(c) and 21 U.S.C. § 853(c) appeared to include the payment of legal fees. 614 F.Supp. at 196. The court determined, however, that such a conclusion would raise insurmountable constitutional problems for the client and ethical concerns for the attorney. *Id.*

The government contends that "these decisions are incorrect." *Justice Department Guidelines*, 38 Cr.L. at 3002. The statute on its face fails to establish any exemption for legal fees, according to the government. Further, the government notes that the Senate report cited by the *Rogers*, *Ianniello*, and *Badalamenti* courts also cited with approval the decision of *United States v. Long*, 654 F.2d 911 (3d Cir.1981), *Justice Department Guidelines*, 38 Cr.L. 3003. In *Long*, an airplane, owned by the defendant convicted of a continuing criminal enterprise in connection with his involvement in an international drug smuggling enterprise, was determined to be forfeitable even though it was transferred to the defendant's attorney before the defendant's conviction. The attorney then attempted to sell the plane. 654 F.2d at 913, 917. The case was cited by the Congress as an example of an effort to transfer forfeitable assets. *Senate Crime Report* at 200, n. 28, 4 U.S.Code Cong. & Ad.News (1984) at 3383.

The government also relies on *dicta* in *In re Grand Jury Subpoena, supra,* to support its position. In discussing the matter before it, which was a motion to quash a subpoena for information on attorneys'

---

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no

such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee. (As amended Pub.L. 98–473, Title II, §§ 302, 2301(a)–(c), Oct. 12, 1984, 98 Stat. 2040, 2192).

fees served on counsel for a defendant charged with a continuing criminal enterprise, the court stated that fees paid to his attorney were forfeitable. Also analyzing the legislative history, the court stated the lawyer was on notice, as required by the statute, from the moment he read the indictment that the defendant's assets were subject to forfeiture. 605 F.Supp. at 849–50, n. 14. "One who receives funds with the knowledge that the funds are subject to forfeiture cannot be said to have entered into an arms length transaction regardless of the price paid for the good or service." *Id.* at 849. Further the court stated:

"Fees paid to attorneys cannot become a safe harbor from forfeiture of the profits of illegal enterprise. In the same manner that a defendant cannot obtain a Rolls-Royce with the fruits of a crime, he cannot be permitted to obtain the services of the Rolls-Royce of attorneys from these same funds."

*Id.* at 850.[4]

The Fourth Circuit tangentially examined this issue in the *Raimondo* decision. In this case, a couple, James and Carol Bello, and Paul Raimondo were convicted of a conspiracy to distribute cocaine. James Bello was also convicted of engaging in a continuing criminal enterprise. 721 F.2d at 477. Carol and James Bello challenged the forfeiture to the government of the profits from three of James Bello's properties which were held by Carol Bello and the couple's lawyer. *Id.* The court determined that Mrs. Bello was involved in her husband's activities and aware of the criminal source of his assets. The lawyer was on notice of the forfeiture potential from reading the indictment. *Id.* at 478. Therefore the proceeds held by both were forfeitable. *Id.*

The court specifically stated, however, that its decision in *Raimondo* was not final as to the lawyer. "Our disposition of this case does not bar Rosen (Bello's lawyer) or his law firm from opposing the government's forfeiture of the realty conveyed to them. Neither Rosen nor his law firm is a party to this criminal action, and our decision is not res judicata with respect to them." *Id.*

The legislative history of the criminal forfeiture amendments to the Crime Control Act is, at times, contradictory. It can legitimately be subject to varying interpretations. Nonetheless, it is reasonable to conclude that the problem faced by lawmakers, and the problem they sought to remedy, was that of defendants purposefully hiding assets arguably subject to forfeiture to avoid relinquishing them to the government. A reasonable inference to be drawn is that it is such sham, fraudulent transactions which Congress specifically intended to single out for remedy. The attorney representing a client under indictment for a RICO violation or a continuing criminal enterprise drug-related offense is certainly not "innocent" of knowledge that the money with which he is paid might be tainted. He is certainly not, however, just

---

**4.** The *Rogers* and *In re Grand Jury Subpoena* courts also considered the meaning of a passage in a House Judiciary Committee report discussing a provision in the amended drug control act relating to the use of pretrial restraining orders in connection with *in personam* forfeitures. The *Rogers* court noted that the House panel stated: " '[n]othing in this section [dealing with *in personam* forfeiture] is intended to interfere with a person's Sixth Amendment right to counsel.' Hse.Rep. 845, part 1, 98th Cong., 2d Sess., *Rept. of the Committee on the Judiciary Concerning Comprehensive Drug Penalty Act of 1984*, p. 19 n. 1." 602 F.Supp. at 1347–48.

The court in *In re Grand Jury Subpoena* contended "[t]his reliance [on the above quoted House panel passage] ... is misplaced" and quoted from the next sentence of the report:

" '[t]he Committee, therefore does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case.' " 605 F.Supp. at 850, n. 14. The court continued: "Clearly, Congress intended, not to resolve the sixth amendment conflict through this legislation, but to leave the resolution of these issues to the courts." *Id.*

The *Badalamenti* court also injected itself into this debate by asserting that *In re Grand Jury Subpoena* has improperly interpreted the quoted passage. "In my view, the sentence noted ... addresses a different problem. It is the difficulty the accused may experience in hiring and paying a lawyer if the funds *of the accused* have been sequestered in anticipation of eventual forfeiture." 614 F.Supp. at 197.

a bogus conduit for this money when providing *bona fide* legal services.

This interpretation of the statute is further supported when one considers the constitutional implications of the government's position. As stated by the court in *Ianniello*, "in deciding among possible interpretations of a statute, the court must select an interpretation that appears to be consistent with the constitutionality of the statute." *Ianniello*, slip. op. at 9, *citing Gutknecht v. United States*, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); *United States v. Rumely*, 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953).

The constitutional principle at issue here, of course, is the Sixth Amendment right to counsel. The Sixth Amendment provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const.Amend. VI. The right to counsel is of such importance "that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'" *Powell v. Alabama*, 287 U.S. 45, 67, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932), *quoting Hebert v. Louisiana*, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). *See also United States v. (Under Seal)*, 774 F.2d 624, 627 (4th Cir.1985). The right to counsel also includes the right to counsel of choice, provided the person seeking counsel has the resources to pay an attorney. *United States v. Inman*, 483 F.2d 738, 739–40 (4th Cir.1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974).

 The government agrees that "[a] defendant is entitled only to counsel of choice whom he can afford." *Justice Department Guidelines*, 38 Cr.L. at 3002, *citing*

*United States v. Rogers*, 471 F.Supp. 847, 851 (E.D.N.Y.1979). Consequently, the government contends that "the qualified right to counsel of choice ... (does not include) the right to use the proceeds of criminal activity to obtain counsel to defend against charges arising from that very criminal activity." *Justice Department Guidelines*, 38 Cr.L. at 3002.

The defendants in the instant case, Mr. Bassett and Mr. Meredith, are apparently wealthy enough to hire counsel of choice. They are under indictment for their alleged participation in a continuing criminal enterprise. If it is determined that the money they pay their lawyers is forfeitable under the statute, then for all intents and purposes, despite their current wealth, they will be unable to hire counsel of choice. From the moment they walk through any law firm door, counsel inside are on notice, simply by virtue of the nature of the indictment, that any work done for these clients will be at least possibly done free. Even accepting, *arguendo*, the contention of the government that there is no right to use the proceeds of criminal activity to obtain counsel, at this point in time the funds of Mr. Bassett and Mr. Meredith cannot be ineluctably considered proceeds of criminal activity, because they have not yet been convicted of this crime. Although the "relation back" aspect of the forfeiture statute is only triggered by conviction, the practical effect is that if forfeiture is applied to attorneys' fees the true impact is felt *prior* to conviction. Despite the legal profession's commitment to *pro bono* work, it is doubtful that attorneys would be willing to invest the many hours of legal work necessary to defend against these serious charges without a more substantial hope of remuneration than the government is willing to concede.[5]

---

5. The defendants' counsel in this case argue that should they agree to represent these defendants without an order from the court exempting their fees, they are essentially violating attorney ethics rules (Paper No. 416, Memorandum at 9). The Code of Professional Responsibility states, "A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case." Md.

Code of Prof.Resp., DR 2–106(c). The contingency here, of course, is that the lawyers will only get paid if the defendants are acquitted or convicted of a lesser charge.

Further, to continue representing these clients under these circumstances would also place these attorneys in conflict with the best interests of their client, they contend. Their "fees will be safe only in the event of an acquittal or a plea

As stated by the court in the *Badalamenti* decision, if the statute applies to attorneys' fees, the message is

> " 'Do not represent this defendant or you will lose your fee.' That being the kind of message lawyers are likely to take seriously, the defendant will find it difficult or impossible to secure representation. By the Sixth Amendment we guarantee the defendant the right of counsel, but by the forfeiture provisions of the RICO and CCE statute (if they apply to the fee of the defense attorney), we insure that no lawyer will accept the business."

614 F.Supp. at 196.

The government suggests the defendants use non-forfeitable legitimate assets to pay their attorneys (Paper No. 437 at 13). This solution again presumes guilt before conviction—no assets are forfeitable until the defendant is found guilty of the crime. As a practical matter, if the defendants are found guilty and their illicit assets are forfeitable, they are unlikely to have segregated their "good" assets from the tainted. Moreover, the government's solution is undercut by its own contention that once it obtains forfeiture, it need not "trace" the tainted money. This latter position is supported by case law. "It matters not that the government received the identical money which the defendants received as long as the *amount* that was received in violation of the racketeering statute is known." *United States v. Conner*, 752 F.2d 566, 576 (11th Cir.), *cert. denied, Taylor v. United States*, —— U.S. ——, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985). Thus, this does not appear to be a realistic option.

The government also contends that the defendant may seek to have counsel appointed under the Criminal Justice Act, 18 U.S.C. § 3006A. *See United States v. Bello*, 470 F.Supp. 723, 725 (S.D.Cal.1979). But the *Rogers* court said this was no more than "lip service to due process and the

right to counsel." 602 F.Supp. at 1349. The court stated that the complexity of RICO cases would strain resources and probably be beyond the expertise of the already "overtaxed" federal public defenders' offices. *Id.* While this latter conclusion is probably overstated, it is true, as observed by the *Badalamenti* court, "[t]he wealthy defendant cannot claim poverty and apply for appointed counsel. His problem is not inability to pay a legal fee but that lawyers will refuse to accept his retainer and will refuse to represent him. He can get neither a paid lawyer, nor a free one." 614 F.Supp. at 197.

Finally, the *Rogers* court indicated that the government's interpretation of the forfeiture provision posed a serious threat to the adversary process. "The government would possess the ultimate tactical advantage of being able to exclude competent defense counsel as it chooses." 602 F.Supp. at 1350.

■ To read the statute as including in the forfeiture provision the fees of attorneys is to violate Sixth Amendment principles. Therefore, this court will follow the holdings of the *Ianniello, Badalamenti,* and *Rogers* decisions and determine that Congress did not intend the statute to encompass fees to attorneys paid for the legitimate rendering of professional services. Any attempt by a defendant simply to use an attorney to funnel or hide illicit funds outside of a legitimate fee arrangement for services rendered would, of course, not protect those funds from forfeiture. *See Badalamenti*, 614 F.Supp. at 198. There is no hint in this case that Mr. Bassett or Mr. Meredith are paying for anything other than legitimate lawyer services.

In reaching this decision, the court is not ignoring conflicting precedent established in this, or any other circuit. The *Raimondo* decision of the Fourth Circuit specifically left open the possibility of a challenge by

---

bargain that includes a Government promise not to seek forfeiture of fees." (Paper No. 416,

Memorandum at 9). The advice they give their clients could be influenced by this fact.

the defense lawyers to the forfeiture. Therefore, the court there did not examine any of the constitutional ramifications of construing the statute to include attorneys' fees. 721 F.2d at 478.[6] Additionally, *Raimondo* was decided before the forfeiture provisions were amended in 1984 and thus without the benefit of the legislative history on which this court has relied.

In the Third Circuit's *Long* decision, upholding a restraining order on the transfer of an airplane to the defense lawyer, the facts strongly suggest a sham transaction. The airplane was in payment of past debts for services and as a retainer for future expenses. The defendant and lawyer reached an oral agreement of $140,000 for the price of the plane. In exchange for the plane, the lawyer gave an unknown messenger $31,000 in cash to give to the defendant, credited the defendant with having paid $79,000 for future services and forgave $30,000 in defendant's unpaid legal debts. The defendant executed a power of attorney in favor of the attorney's law firm for the purpose of transferring title to the plane. Title was transferred to the attorney's partner by an individual named "Tony" in the Bahamas. The law firm then attempted to sell the plane through advertisements in trade magazines. Issuance of a restraining order stopped the sale. 654 F.2d at 913.

These facts, under the current statutes, might well be considered the substance of a sham transaction subject to forfeiture. Therefore, the *Long* decision cannot be read as undermining this court's ruling today.

Accordingly, it is this 11th day of April, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' motion to exempt legal fees from forfeiture be, and the same is hereby, GRANTED.

2. That it is hereby DECLARED the government may not seek the forfeiture of legitimate attorneys' fees incurred and paid to Leslie Stein, Esq., attorney for Clarence Meredith, or Ronald Rubinstein, Esq., attorney for Ronald Bassett, for representation of said defendants against the charges set out in the indictment and superseding indictment in this case.

3. That the government is hereby ENJOINED from seeking the forfeiture of legitimate attorneys' fees incurred and paid to Leslie Stein, Esq., attorney for Clarence Meredith, or Ronald Rubinstein, Esq., attorney for Ronald Bassett, for representation of said defendants against the charges set out in the indictment and superseding indictment in this case.

4. That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.

---

**6.** In the *Bello* decision, a case decided in the Southern District of California, the court upheld a pretrial restraining order preventing the defendant under indictment for a RICO violation from disposing of certain assets. The defendant contended the order would render him unable to hire counsel. 470 F.Supp. at 724–25. The *Bello* court, like the *Raimondo* court, did not examine the potential Sixth Amendment problems. Instead, it merely concluded counsel could be appointed if the defendant had no money. *Id.* at 725.