UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard H. THIER,
Defendant-Appellant.

No. 85–4857.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1986.

---

William W. Taylor, III, Washington, D.C., John F. Evans, G. Richard Strafer, Coral Gables, Fla., for Richard H. Thier.

Richard H. Thier, Miami Beach, Fla., pro se.

Victor Sherman, Janet Sherman, Santa Monica, Cal., for amicus curiae-Nat. Ass'n. for Criminal Defense Lawyers.

Judith A. Lombardino, D.H. Perkins, Asst. U.S. Attys., Shreveport, La., for the U.S.

Before CLARK, Chief Judge, RUBIN, and GARZA, Circuit Judges.

CLARK, Chief Judge:

Appellant challenges a restraining order that barred any disposition of his assets pending the outcome of his trial for violating the Continuing Criminal Enterprise Statute (CCE). The bases of the order were (1) the grand jury's declaration that it found the assets were forfeitable under CCE, and (2) the declaration of the prosecuting attorney that Thier was guilty of violating CCE, had profited from the violations, and had purchased the assets after the violations commenced. Because the district court failed to follow Fed.R.Civ.P. 65(b) and to consider Thier's need for necessary living expenses and reasonable attorneys fees, we remand with directions.

I

On August 23, 1985, a federal grand jury returned an indictment charging Richard H. Thier with participating in a continuing criminal enterprise at various times between January 1976 and May 1981 in violation of various provisions of Title 21. The indictment stated that specified income and property belonging to Thier arose from his participation in this enterprise or afforded a source of influence over the enterprise.

On August 28, the government requested a restraining order pursuant to the indictment and 21 U.S.C. § 853(e)(1)(A) that would freeze listed assets of Thier including all of his monies. In support of this request, the government submitted the grand jury indictment and the verified declaration of Judith A. Lombardino, Assistant

United States Attorney. Lombardino's declaration stated that she had actively investigated Thier, that evidence indicated Thier had participated in and profited from a marijuana smuggling organization, and that Thier accumulated the named assets and ninety-five percent of his income between 1978 and 1983 as profits from this narcotics trafficking. The prosecutor also declared that Thier had been attempting to sell his home since February 1983.

The district court issued an *ex parte* restraining order that same day. The order prohibited any sale, transfer or disposition of the listed assets and "[a]ll monies in the possession, custody or control of RICHARD H. THIER." The court found that the government had alleged facts sufficient to indicate it was likely to prevail at trial, and that without the order, Thier might frustrate justice and endanger the government's interest in these properties by placing them beyond the jurisdiction of the court. The order was to remain in effect until further order by the court. It was served on Thier and his counsel on August 29, 1985.

In the period from September 12 to 16, 1985 Thier filed a series of motions seeking to exempt from the restraining order attorneys fees and ordinary and necessary living expenses. On September 19, 1985, Thier sought a hearing on several matters including a modification of the restraining order in accord with his prior motions. The hearing was held on September 25, 1985, and the motions were taken under advisement.

On October 30, 1985, the court denied the motion to modify. The court found that Thier was entitled to and could be adequately represented by appointed counsel, and that Congress did not intend, under 21 U.S.C. § 853(e)(1)(A), to exempt the use of potentially forfeitable assets to pay a defendant's attorneys fees or living expenses.

On appeal, Thier makes three arguments: (1) the district court's restraint of his assets without affording him an adversary hearing violated his fifth amendment due process rights and his sixth amendment right to counsel; (2) the district court's failure to exempt assets to cover attorneys fees violates his sixth amendment right to counsel; (3) the district court's failure to exempt assets to cover living expenses violates his fifth amendment due process rights.

II

We first consider Thier's contention that the district court erred in failing to afford him an adversary hearing. He suggests that the post-indictment pretrial forfeiture provision of CCE is constitutionally deficient if it allows the district court to impose an unlimited restraint on a defendant's assets without an adversary hearing. The government, on the other hand, asserts that Congress properly and clearly intended to allow a district court to issue such restraints upon the filing of an appropriate indictment without further limitation. The government contends that the probable cause required for the entry of the indictment supports the issuance of a restraining order that freezes a defendant's assets and the continuation of that restraint until the conclusion of trial.

The CCE forfeiture provisions were amended in 1984 to provide in pertinent part:

> (1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—
>
> (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; . . . .

21 U.S.C. § 853(e)(1)(A). Unlike subsequent provisions of § 853(e) that deal with restraining orders obtained before the fil-

ing of an indictment, this section under which the judge restrained Thier's assets is silent as to the durational limits of such orders and as to any notice or hearing requirements. *Compare* 21 U.S.C. § 853(e)(1)(A) *with* 21 U.S.C. §§ 853(e)(1)(B)–(3) (allowing the issuance of a ninety-day pre-indictment restraining order after notice, hearing and appropriate determinations by the court, or an *ex parte* ten-day preindictment temporary restraining order after certain showings by the movant and determinations by the court). The legislative history indicates that Congress thought that prior notice and a hearing should not be required for a post-indictment restraining order because the indictment itself furnished notice of the government's intent to seek forfeiture, and there would be a strong need to quickly obtain a restraining order before assets could be concealed. S.Rep. No. 225, 98th Cong., 2d Sess. 203, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3386. The legislative history does not discuss whether there is a need for a hearing after a restraining order is issued.

The corresponding pre-amendment provision allowed district courts to enter "restraining orders or prohibitions, ... in connection with any property or other interest subject to forfeiture under this section, as they shall deem proper." 21 U.S.C.A. § 848(d) (1981). Numerous federal courts have held that restraining orders and injunctions issued pursuant to this section were subject to procedural requirements such as those in Fed.R.Civ.P. 65. *See, e.g., United States v. Lewis,* 759 F.2d 1316, 1324–25 (8th Cir.1985) *cert. denied,* —— U.S. ——, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Spilotro,* 680 F.2d 612, 617 (9th Cir.1982) (interpreting identical provision in RICO); *United States v. Long,* 654 F.2d 911, 915 (3d Cir.1981). Few courts have addressed this issue since the 1984 amendments.

In *United States v. Crozier,* 777 F.2d 1376 (9th Cir.1985), the court ultimately dealt with the amended version of §§ 853(e), (n). There, the district court had denied without a hearing the motions of the defendant and a third party to dissolve a post-indictment pretrial restraining order. When the matter was considered by the Ninth Circuit on the merits, it held that CCE was "unconstitutional on its face because Congress failed to provide for a hearing on a restraining order before trial or conviction." *Id.* at 1383. Finding that Fed.R.Civ.P. 65 controlled the order in the absence of valid procedural guidelines, the court vacated the order and remanded with instructions to the district court to hold a hearing in accordance with that rule. *Id.* at 1384.

In *United States v. Rogers,* 602 F.Supp. 1332 (D.Colo.1985), the court denied a motion for a post-indictment pretrial restraining order under the forfeiture provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1963(e)(1)(A). This amended provision is identical to the amended 21 U.S.C. § 853(e)(1)(A). *Rogers* relied on an assumption that Congress was aware of and had adopted pre-amendment case law, and on legislative history, to analogize the procedural limits on the forfeiture provision to Fed.R.Civ.P. 65. 602 F.Supp. at 1343–44. *Rogers* held that while the statute allows the entry of an *ex parte* restraining order of short duration, the entry of any injunction required an adversary hearing. *Id.* at 1343–45. The *Rogers* court stated that the defendant could not use the hearing to attack the indictment, but it required the government to present additional evidence of the strength of its case to justify an injunction. *Id.* at 1345. Following these guidelines, the court exercised the discretion granted by the statute and denied the government's request for a restraining order. *Id.* at 1345–46.

In contrast, *United States v. Draine,* 637 F.Supp. 482 (S.D.Ala.1986), upheld § 853(e) as constitutional. The court found that *Crozier* was limited to its facts, and that where only five months had elapsed between the entry of a pretrial restraining order and the commencement of trial, and the defendant had partially caused that delay, the lack of a prompt post-seizure hear-

ing did not amount to a violation of constitutional rights. The court relied heavily on legislative history, stating that "[t]he criminal forfeiture provisions were intended to provide prosecutors the option to consolidate the forfeiture action with the criminal prosecution and thereby avoid being forced to prove the merits of the underlying criminal case in a separate civil proceeding against the defendant's property well in advance of trial in order to obtain an order restraining the defendant's transfer of property alleged to be forfeitable in the indictment." *Id.* (citing S.Rep. No. 225, 98th Cong., 2d Sess. 196, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3379).

The pertinent parts of Fed.R.Civ.P. 65 are as follows.

(a) **Preliminary Injunction.**

(1) *Notice.* No preliminary injunction shall be issued without notice to the adverse party.

. . . .

(b) **Temporary Restraining Order; Notice; Hearing; Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is

extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

Fed.R.Civ.P. 65(a)(1), (b).

█ We need not consider the constitutionality of § 853(e)(1)(A) in this case. The statute does not on its face or by necessary implication bar minimum due process protections. The wording of § 853 does not expressly or impliedly negate the applicability of Fed.R.Civ.P. 65. The requirements of Rule 65 apply to the issuance of all restraining orders and injunctions by the courts of the United States. Since those requirements were not excluded, they apply to restraining orders and injunctions issued pursuant to 21 U.S.C. § 853(e)(1)(A). With the procedures and protections accorded by Rule 65 included, the statute comports with procedural due process.

█ Because Rule 65 must be followed in connection with post-indictment pretrial restraining orders, a judge may enter an *ex parte* restraining order under § 853(e)(1)(A) only upon the filing of an appropriate indictment and compliance with Rule 65. Congress has determined that the

context of a post-indictment restraining order presents sufficient exigencies to satisfy the first requirement of Rule 65 that irreparable loss would occur before a hearing could take place. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 203, *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3386. Therefore the government need not make any showing of potential irreparable loss other than the return of the described form of indictment. Congress intended for the indictment itself to constitute sufficient notice of the government's intent to seek forfeiture. *Id.* Where the indictment describes particular property as being forfeitable, the indictment satisfies the Rule 65 requirements that the applicant's attorney must certify that efforts have been made to give notice and give reasons why notice should not be required. The remainder of Rule 65 must be satisfied as it would be in any other context.

Under Rule 65 an *ex parte* restraining order is effective for a maximum of ten days unless the court extends it for one additional ten day period for good cause shown, or unless the defendant consents to an extension. Prompt notice to the defendant and an adversary hearing must follow the order and precede the entry of an injunction that freezes the defendant's assets for any further period of time. The district court must also hold a prompt hearing if the defendant moves to modify or dissolve a restraining order. *See* Fed.R.Civ.P. 65(a)(1), (b).

Rule 65 requirements do not impair the court's power to refuse to "look behind" the indictment. Nor do they act to require the government to prove the merits of the underlying criminal case. What they do, and all that they do, is give the defendant a constitutional opportunity to be heard in a meaningful way at a meaningful time before he is denied the present use of property which may or may not prove to be forfeitable. *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). No part of the legislative history refers to procedures governing the grant of an asset-freezing injunction. *See Rogers,* 602 F.Supp. at 1343 (requiring

more than the probable cause provided by the indictment at a hearing on a request for an injunction is consistent with legislative history).

■ The district judge in Thier's case issued an *ex parte* order that has denied him the use of his assets until the conclusion of his trial. The court acted in accord with the literal words of § 853(e)(1)(A): "Upon application of the United States, the court may enter a restraining order ... upon the filing of an indictment ... charging a violation of this subchapter ... and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture...." The order, however, exceeded the hearing and durational limits set for the issuance and continuance of restraining orders in Rule 65. The order enjoined Thier without the opportunity for a prompt adversary hearing. We therefore remand with directions to the district court to conduct a hearing on reasonable notice, which will accord with this opinion. Should the court determine to continue the restraint on Thier after such hearing, it should do so in accordance with the procedural protections of Rule 65.

### III

In light of the above ruling, Thier's other arguments raise questions as to the burden of proof at the required hearing or in connection with any new restraining order or injunction. Thier insists that the government has the burden of proving that it is likely to convince a jury beyond a reasonable doubt that the assets in question are forfeitable. This burden would require the government to demonstrate that it is likely to convince the jury beyond a reasonable doubt that Thier violated CCE and that the assets in question are products of that illegal action. Such a burden comes close to requiring, if it does not require a preliminary determination of guilt. Legislative history indicates a clear intent to specifically forbid a court to "entertain challenges to the validity of the indictment" at a hearing

on a motion to modify or vacate a restraining order. S.Rep. No. 98–255, 98th Cong., 2d Sess. 203, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3386.

The government maintains that if a grand jury's determination of probable cause is sufficient to deprive a defendant of his liberty pending a trial on the indictment returned, it is also sufficient to restrain his potentially forfeitable property until a trial finally determines his guilt or innocence. According to the government, the filing of an indictment with forfeiture allegations represents a determination that there is probable cause to believe that all right to the property alleged to be forfeitable has already vested in the Government.

*Rogers* held that probable cause may support the entry of a temporary restraining order, but that "due process requires that the government present evidence of the strength of its case in addition to the indictment" in order for the court to exercise its discretion to grant an injunction. 602 F.Supp. at 1343, 1345. The *Crozier* court did not address this question. Neither *Rogers* nor *Crozier* provides specific guidance as to the government's burden in a hearing on a motion to enjoin or restrain the use of assets belonging to a § 853(e)(1)(A) defendant until the conclusion of trial. *But see Spilotro,* 680 F.2d at 618 (a pre-amendment case holding that "the prosecution need only demonstrate the *probability* that the jury will convict the defendant and find the properties subject to forfeiture" by producing evidence other than the indictment "sufficient … to permit the District court to independently assess whether the burden has been met") (emphasis in original) (footnote omitted).

This court has traditionally required a showing of four elements for the issuance of a preliminary injunction: (1) "a substantial likelihood that the plaintiff will ultimately prevail on the merits of his claim;" (2) "the injunction must be necessary to prevent irreparable injury;" (3) "the threatened injury to the plaintiffs must outweigh the harm the injunction might do the defendants;" and (4) the "entry of an injunction must be consistent with the public interest." *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 302 (5th Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980) (citing cases).

■ These requirements form an appropriate outline for the government's burden in a hearing pursuant to a § 853(e)(1)(A) injunction request. The court should consider the merits of the government's case only as to the possessory property rights which have been created or altered by the grand jury's finding of the existence of probable cause that the assets are forfeitable. The grand jury's finding of probable cause that the defendant should be tried for the crime and its determination that certain assets are potentially forfeitable constitute strong showings for injunctive relief, but they are not irrebuttable. Congress did not require that forfeiture take place upon the issuance of an indictment. Rather, it vested equity jurisdiction in a district court to determine the government's right to injunctive relief. Section 853(e)(1)(A) is a permissive provision. By its terms a judge "may" issue a restraining order or injunction freezing a defendant's potentially forfeitable assets upon the filing of a proper indictment and certain allegations. The court is not free to question whether the grand jury should have acted as it did, but it is free, and indeed required, to exercise its discretion as to whether and to what extent to enjoin based on all matters developed at the hearing.

## IV

We now consider Thier's arguments concerning an exemption from forfeiture of sufficient assets to pay reasonable attorneys fees and necessary living expenses.

■ In the exercise of his discretion, the district judge must take into account the tension between the government's claim that the assets are forfeitable because the grand jury has made a probable cause determination that they are, together with any proof offered by the government, and the defendant's claim to title and right of

use of the property pending a determination of guilt of the underlying crime that creates forfeitability. Thier asserts that the court should exempt assets sufficient to pay his living expenses until the end of trial and the reasonable fees of his defense counsel of choice. We do not agree that such exemption is mandatory. However, defendant's need for living expenses and his right to the attorney of his choice are factors that the district judge must consider in deciding whether and to what extent to grant an asset-freezing injunction.

■ While the right to assistance of counsel encompasses a right to counsel of choice, that right of choice is not absolute. *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978). A defendant may not use this right to interfere with, manipulate, or unreasonably delay the fair, prompt and efficient administration of justice. *Id.*

The CCE forefeiture section contains separate provisions that deal with the forfeiture of assets in the hands of third parties or in which third parties have an interest. Section 853(c) provides that title to forfeitable assets vests in the United States upon the commission of the illegal act that gave rise to forfeiture. It also provides that any such asset transferred to a third party after that act is forfeitable, "unless the transferee establishes in a hearing ... that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture...." 21 U.S.C. § 853(c). Section 853(n) provides guidelines for a post-conviction hearing to determine whether a third party was a bona fide purchaser. That section also provides that any person who asserts an interest in forfeited property superior to the defendant's interest may petition the court for a hearing. *See* 21 U.S.C. §§ 853(n)(2), (6)(A). A third party who possesses the forfeited asset, or a third party whose interest in a forfeited asset predates the defendant's interest, may thus assert a claim to that asset.

The legislative history as to whether the government's forfeiture powers under CCE and RICO extend to defense attorneys fees is meager. The only direct mention is in the following provision:

Nothing in this section is intended to interfere with a person's Sixth Amendment right to counsel. The Committee, therefore does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case.

H.R.Rep. No. 845, Pt. 1, 98th Cong., 2d Sess. 19 n. 1 (1984).

This issue involves consideration of the defendant's sixth amendment rights, the attorney's interest in funds or assets marked for his payment, the statutory mandate that knowledge of potential forfeitability at the time of transfer defeats a third party's interest in forfeitable property, and the fact that defense counsel is necessarily aware of the potential forfeitability of his client's assets. In these regards we note that another congressional report states:

Paragraph (6) provides that a third party will prevail if his claim falls into one of two categories: first, where the petitioner had a legal interest in the property that, at the time of the commission of the acts giving rise to the forfeiture, was vested in him rather than the defendant or was superior to the interest of the defendant; or second, where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a *bona fide* purchase for value and had no reason to believe that the property was subject to forfeiture.

S.Rep. No. 98–255, 98th Cong., 2d Sess. 209, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3392. A footnote explains further that "[t]he provision should be construed to deny relief to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions." *Id.* at 3392 n. 47.

The case law in the area is in conflict. Several courts have held both pre- and post-amendment that attorneys fees are ex-

empt from forfeiture under CCE and RICO, although they did not address this issue in precisely the same context as that issue is raised in Thier's case. In the most recent, *United States v. Figueroa*, 645 F.Supp. 453 (W.D.Pa.1986), the district court allowed a court-appointed attorney to move in a post-conviction proceeding for modification of a forfeiture order. The court held the attorney was within the group of persons Congress recognized as being entitled to a judicial determination of their claims because he was a good faith provider of legal services. The attorney was entitled to payment even though the defendant's sixth amendment right to choose his counsel was not involved because the attorney was court-appointed. The court amended the forfeiture order to reimburse the attorney for itemized costs and fees.

Another recent case, *United States v. Bassett*, 632 F.Supp. 1308 (D.Md.1986), involved a pretrial motion by CCE defendants to exempt attorneys fees. A letter from the government's counsel advising defense counsel that the government intended to seek forfeiture after trial of the legal fees paid to defense counsel prompted the motion. *Id.* at 1309. The court held that the defendants had standing to assert this challenge because of the risk of impairment to their constitutional right to counsel of choice, *Id.* at 1310, and examined the defendants' arguments in light of the third party forfeiture provision of CCE. After examining legislative history and case law, the court ruled that "Congress did not intend the statute to encompass fees to attorneys paid for the legitimate rendering of professional services," for to do so would "violate Sixth Amendment principles." *Id.* at 1317. The government was enjoined from seeking the forfeiture of legitimate fees paid to defense counsel. *Id.* at 1318.

In *United States v. Reckmeyer*, 631 F.Supp. 1191 (E.D.Va.1986), the defendant moved to modify an *ex parte* restraining order to exclude attorneys fees from forfeiture. The request was denied because the defendant had pleaded guilty the day before, but the court permitted counsel to raise the issue in a third party petition after sentencing and the entry of a forfeiture order covering all previously restrained monies. Counsel had not received full payment for their services at that time. *Id.* at 1193. The court held that as good faith providers of services, counsel had standing to contest the forfeiture order, *Id.* at 1194, and that the forfeiture of bona fide attorneys fees under § 853 would violate the sixth amendment by impairing the defendant's right to obtain counsel of choice and his right to effective assistance of counsel. *Id.* at 1196–98. The government was directed to pay defense counsel out of the defendant's forfeited assets. *Id.* at 1198.

In *United States v. Ianniello*, No. S 85 Cr. 115, slip op. (S.D.N.Y. Sept. 4, 1985) [Available on WESTLAW, DCTU database] (available Aug. 4, 1986, on LEXIS, Genfed library, Dist file), the court found that legal fees to pay counsel of choice are necessities of life, and modified an *ex parte* pretrial restraining order to exempt attorneys fees from forfeiture under RICO. The court found that the payment of bona fide attorneys fees was not a sham transaction which Congress intended the forfeiture provisions to reach, and that the forfeiture of valid defense legal fees would abridge a defendant's sixth amendment right to counsel. *Id.*

In *United States v. Badalamenti*, 614 F.Supp. 194 (S.D.N.Y.1985), the court granted an attorney's motion to quash a trial subpoena *duces tecum* requiring him to testify concerning his fee arrangement with the defendant. *Id.* at 195, 201. The defendant had apparently already paid substantial fees to the attorney. *See id.* at 195. The issue was examined in terms of CCE's third party forfeiture provision. *Id.* at 196. The holding was ultimately based however, on sixth amendment rights. The court stated: "the constitutional problem is not one of choice of counsel; nor is it one of getting retained lawyers to work. The problem is the unlikelihood of obtaining a lawyer *at all* if the lawyer will incur forfei-

ture of his fee upon the client's conviction." *Id.* at 197–98 (emphasis in original). The holding excepted sham fee arrangements or seizure of funds *"in the hands of the defendant." Id.* at 198 (emphasis in original).

In *Rogers,* the court granted the defendant's pretrial motion to exclude legitimate attorneys fees and costs from forfeiture under RICO in order to protect the constitutional right to counsel. 602 F.Supp. at 1346–51. Although this was a pretrial proceeding, the court apparently intended to limit its holding to compensation already paid to attorneys. *See id.* at 1347 ("Congress intended different treatment of assets transferred to third parties and assets in the hands of the defendant."), 1348 ("Congress did not intend to include in those items forfeitable the compensation already paid for goods and services legitimately provided.")

The above cases relied to varying extents on the arguments that forfeitability of a CCE or RICO defendant's attorneys fees would restrict the defendant's ability to obtain counsel, and that a defense attorney's knowledge of the potential forfeitability of his client's assets should not defeat the attorney's interest in those assets as payment for legitimate services under the third party forfeiture provisions of those acts.

Other courts have ruled unfavorably on requests to exempt attorneys fees from forfeiture. In *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985,* 605 F.Supp. 839 (S.D.N.Y.1985), the court denied a CCE defendant's motion to quash a subpoena duces tecum that required his attorney to testify before a grand jury concerning their fee arrangement. *Id.* at 843. The court held that the alleged substantial threat to his fifth and sixth amendment rights entitled the defendant to intervene as of right. *Id.* at 845. The court ruled that requiring the attorney to testify before the grand jury would not deprive the defendant of effective assistance of counsel. *Id.* at 845–50 (the information was not privileged or involved in defense

strategy, would not take away too much time from defense preparations, nor would the threat of forfeiture discourage defense counsel because the canons of professional responsibility require zealous preparation). The court recognized that if the attorney testified at trial he could be disqualified as trial counsel. However, it held that the importance of such testimony to the government's case could outweigh the defendant's limited right to counsel of choice. *Id.* at 852–53. The court recommended a limited disqualification in that event, so that counsel could continue to assist with the defense. *Id.* at 853. The reasoning of *Rogers* was rejected. *Id.* at 849–50 n. 14. The court relied on legislative history and the sufficiency of the notice given by the indictment to annul the attorney's right to such assets. *Id.*

In *United States v. Raimondo,* 721 F.2d 476 (4th Cir.1983), a convicted CCE defendant appealed the jury's forfeiture of his assets, claiming among other things, that interests held by his attorney were not subject to forfeiture. *Id.* at 477. The court ruled that the indictment gave sufficient notice to the attorney that the assets were forfeitable and rejected this argument. *Id.* at 478. The court specifically noted, however, that this disposition did not bar the attorney and his law firm from opposing the forfeiture of the defendant's interests that had been conveyed to them. *Id.*

In *United States v. Ray,* 731 F.2d 1361 (9th Cir.1984), the court held that a convicted CCE defendant had not shown that an *ex parte* pretrial order restraining his assets denied him this right because the court appointed his attorney of choice as defense counsel. *Id.* at 1366. *See also United States v. Lewis,* (8th Cir.1985) 759 F.2d at 1326–27 (restraining order did not violate defendant's right to choice of counsel because defendant did not request a particular attorney and appointed counsel provided competent representation).

In *United States v. Long,* 654 F.2d 911 (3d Cir.1981), the court affirmed a restraining order that enjoined the defendant's

preindictment transfer of an airplane to his attorney. *Id.* at 912–13. It found that the government had demonstrated in a hearing "that it was likely to convince a jury beyond a reasonable doubt that the plane is subject to forfeiture." *Id.* at 915. The court concluded that the defendant could avoid the forfeiture of illegal profits by transferring such assets to a non-indicted, knowing third party. *Id.* at 916. At the time of this transfer, the attorney knew the defendant was about to be indicted for drug smuggling. He thus acquired the plane with notice of the potential forfeiture. *Id.* at 917.

In *United States v. Bello,* 470 F.Supp. 723 (S.D.Cal.1979), the government secured a post-indictment pretrial restraining order. The court noted that the order deprived the defendant of counsel of choice, not of counsel, and that the defendant was entitled to court-appointed counsel if he could not hire his own attorney. *Id.* at 725.

■ We agree with the *Bassett, Ianniello, Reckmeyer, Badalamenti,* and *Rogers* courts that the defense attorney's necessary knowledge of the charges against his client cannot defeat his interest in receiving payment out of the defendant's forfeited assets for legitimate legal services. As the court in *Bassett* aptly stated:

> The attorney representing a client under indictment for a RICO violation or a continuing criminal enterprise drug-related offense is certainly not "innocent" of knowledge that the money with which he is paid might be tainted. He is certainly not, however, just a bogus conduit for this money when providing *bona fide* legal services.

632 F.Supp. at 1315–16 (emphasis in original). We see no indication in the statute or the legislative history that Congress intended to exclude attorneys from bringing a third-party claim for a reasonable attorneys fee against potentially forfeitable assets in a post-conviction hearing. Such a claim could provide an appropriate means of examining claims of this sort.

■ Applying these principals to Thier's case, however, does not require that the district judge must exempt attorneys fees from present restraints. This case is now in a pretrial posture. The defendant has requested this exemption on the basis of his qualified right to counsel of choice. The statute provides defense counsel with an action in his own right to recover his fees from forfeited assets if the defendant is convicted. Should the district court refuse to exempt attorneys fees prior to trial and the defendant be convicted, the attorney may demonstrate in a post-conviction hearing that he rendered legitimate services and is entitled to payment from the forfeited assets. Regardless of this procedure, however, the defendant's interest in obtaining counsel of choice and the possible adverse effects of a pretrial refusal to exempt defense counsel's fees from forfeiture are factors that the district court must consider in exercising its discretion to grant a pretrial injunction that restrains the defendant's assets until conclusion of trial. We only hold that they are not factors that mandate a particular result for that exercise.

■ The defendant's interest in having access to funds needed to pay ordinary and necessary living expenses until the conclusion of trial also must be balanced against the government's interest in preventing the depletion of potentially forfeitable assets. While the weight of this interest is logically stronger than that involving payment of counsel, it too is not an interest which automatically controls the court's discretion.

■ We would observe, however, that the government errs when it contends that exempting from restraint sufficient assets to pay reasonable attorneys fees and necessary living expenses allows the defendant to benefit economically from criminal proceeds. *See Rogers,* 602 F.Supp. at 1349. *But see United States v. Draine,* 637 F.Supp. 482 (S.D.Ala.1986); and *In re Grand Jury Subpoena,* 605 F.Supp. at 849–50 n. 14. Expenditures the defendant must make to keep himself and his dependants alive and to secure competent coun-

sel to prove his innocence or protect his procedural rights should not be considered incentives to crime. The notion that a defendant would commit criminal acts to accumulate monies or property in order to pay for necessary food, clothing and shelter while he is being tried or in order to pay a reasonable fee to the attorney he chooses to assist in his defense is sophistry.

■ In balancing these interests, the court should also consider whether the defendant possesses assets not subject to forfeiture that could supply living and defense expenses. In this regard it is appropriate to observe that an order phrased as the one issued in this case presents a problem in that it freezes "all monies" under the defendant's control until trial. Should the defendant convert a nonforfeitable asset into funds, a reasonable construction of the present order would freeze those converted monies before they could supply necessities or pay reasonable counsel fees.

The district judge denied Thier's motion to modify the restraining order, in part, because the statute did not expressly exempt assets to pay attorneys fees and living expenses. The judge therefore did not attempt to balance Thier's interests with the government's interest. On remand the district court should consider these rights and interests in the context set out in this opinion.

The judgment appealed from is

REMANDED, with directions.

ALVIN B. RUBIN, Circuit Judge, concurring.

Although I agree with the result reached by the majority, I would require the district court to permit the defendant access to sufficient funds to pay the reasonable costs of his defense and necessary living expenses for himself and his family unless the government can show a compelling reason why this should not be done.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[1] What constitutes a "meaningful" hearing fulfilling the requirements of due process depends, of course, upon the nature of the case.[2] "Where only property rights are involved, mere postponement of ... judicial equity is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate."[3] Indeed, when governmental interests are powerful enough, property may be withheld by the state temporarily before any adversary hearing at all.[4]

Due process is not a procedural absolute. What is required may depend on the weight of the interests involved. The Government certainly has a valid interest in assuring that funds illegally obtained are not laundered or secreted between the time a defendant is indicted and the time when his criminality is determined by actual conviction. This is sufficiently important to weigh heavily in deciding what due process requires when the Government seeks to protect its interest. But due process must be determined on a scale whose balances weigh both sides, not simply the Government's interest. The scale must also weigh the private interests of the affected individual, the risk of an erroneous deprivation of that interest under the procedures used, and the probable value and additional costs,

---

1. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

2. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

3. *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). *See also Springer v. United States,* 102 U.S. (12 Otto) 586, 593, 26 L.Ed. 253 (1880); *Scottish Union & National Insurance Co. v. Bowland,* 196 U.S. 611, 631, 25 S.Ct. 345, 49 L.Ed. 619 (1905).

4. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

if any, of additional or substitute procedural safeguards.[5]

The Government contends that all the assets it has asked the courts to freeze are not Thier's property but the Government's. The Government, however, has no right to the property to which Thier now has legal title unless it establishes both his guilt of engaging in a continuing criminal enterprise and the fact that the property it seeks to forfeit has been derived from criminal activity.[6] Whether it can do so remains to be seen. Although the Government argues persuasively that, for purposes of obtaining a restraining order freezing an accused's apparently ill-gotten assets until trial, the Government should not be required to meet the heavy burden of proof it will ultimately face at trial, the balance of hardship shifts substantially when the Government seeks to freeze all of an accused's known assets, including those necessary to provide the accused with counsel and sustenance for himself and his family.

Even with the procedural safeguards my colleagues properly require, the right of an accused person to an adequate defense and sustenance of his family depend upon the discretion of the trial judge. If the district court sees fit, on the basis merely of its apparently unfettered judgment, the prosecution may thus exact from a person who has been charged with violating 21 U.S.C. § 848 a pretrial punishment more stringent than arrest, for an arrested person can at least employ counsel and is housed and fed by the government.

If Thier has no money to buy food or to pay for housing, he might waive his right to release on bail and go to jail, but he still could not employ counsel and his family would remain stripped of all means of support—without even the option of reporting to jail—though accused of no crime. That the mere fact of an indictment accompanied by the affidavit of a prosecutor can accomplish these results should shock the judicial conscience at least as much as does the assertion that the prosecution may pump the stomach of an accused person in order to obtain evidence.[7]

Due process also requires the appointment of counsel for every indigent person accused of a crime, but courts appoint lawyers of average competence who typically have little experience in complex cases. No one would wish to be represented by appointed counsel in a case of this nature. Preparation for trial can be expected to require months of work. This defendant, made indigent by government action, should not be dependent on the list of those available for routine cases.[8] The tool of the restraining order, thus put into the hands of the prosecution, gives the Government the power to exclude vigorous and specialized defense counsel. While the majority's opinion blunts that tool by giving the accused an opportunity to invoke the district court's discretion, I would not make either the sustenance of the defendant and his family or the defendant's right to retain counsel so dependent.

The fact that Thier has been indicted is no evidence of his guilt. Like all others in this free nation, he is presumed innocent, whatever the Government charges. In the absence of exceptional circumstances, the Government may not even search private property without obtaining a warrant from an impartial magistrate based on a showing of probable cause. The restraining order in this case imposes an even more stringent penalty without such a determination, for despite the statutory declaration to the contrary, a grand jury indictment is not equivalent to a determination of probable cause by an impartial judicial officer. Indictments are notoriously easy to obtain, and grand juries today offer little protection against unwarranted prosecution.

5. *Mathews v. Eldridge,* 425 U.S. at 334–35, 96 S.Ct. at 903 (1976); *Cafeteria & Restaurant Workers Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961).

6. *See* 21 U.S.C. § 848.

7. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

8. Note, The Taxpayer's Right to Counsel in Jeopardy Assessments, 56 Tex.L.Rev. 883 (1978).

The Government seeks a restraining order freezing all of the accused's property, including not only specified assets but also "all monies in [his] possesion, custody or control," which presumably includes the contents of his billfold and the change in his pockets. I would require the Government to submit proof that the accused will not be left without adequate means to retain vigorous counsel and to provide basic sustenance for himself and his dependents. In instances in which such proof cannot be made, the virtual confiscation of an accused's property—though temporary and accompanied by fair notice and a timely hearing—is so unconscionable as to deprive the accused of substantive due process however it is accomplished procedurally. This is indeed punishment before conviction and before trial.

Even our system of civil justice rests on the adversary process. In a criminal trial that process is paramount. The Government should not be permitted to cripple the defendant at the outset of the struggle by depriving him of the funds he needs to retain counsel and to provide food for himself and his family. Even in the war against crime, due process forbids terrorism. While I welcome the safeguard of judicial discretion, I would set a standard that would guarantee the accused fundamental fairness in the resolution of his dispute with the Government by assuring him minimal funds, reasonable in amount and subject to the court's scrutiny, to employ counsel and to pay essential living expenses until the Government has proved its claim.