**UNITED STATES of America**

**v.**

**W. Harold SELLERS, Robert Dupre & Michael J. Barrack.**

**Crim. No. 93-327.**

United States District Court,
E.D. Louisiana.

Feb. 23, 1994.

Order Granting Reconsideration
of Decision in Part March 9, 1994.

---

Ltd. This Restraining Order, issued pursuant to 21 U.S.C. § 853(e)(1)(A), was to remain in effect until further Order of this court.

To afford the Defendants the procedural protections of Federal Rule of Civil Procedure 65 (*United States v. Thier,* 801 F.2d 1463, 1468–69 (5th Cir.1986)), the court also Ordered that the Defendants show cause in writing: [1]

(1) Why this Temporary Restraining Order should not be converted to a Preliminary Injunction to be in effect throughout these proceedings; and

(2) Why these Defendants should not be Ordered to repatriate to the registry of this court those assets (funds) currently on deposit in the aforementioned bank and bank accounts.

Having reviewed the Superseding Indictment, the memoranda of defense counsel and the Government, the court makes the following Findings of Fact and/or Conclusions of Law:

(1) The property which the Government seeks to restrain, enjoin, protect and eventually forfeit are the alleged proceeds of bank fraud located in Grand Cayman bank accounts. The Grand Jury heard evidence regarding the funds in the accounts and returned a superseding indictment charging the appropriate violations and referencing the Grand Cayman accounts in Count 1 (page 5, paragraph 7); Count 1, (page 8, paragraph 31); and Count 2 (page 10, paragraph 1);

(2) The property sought to be restrained, enjoined, protected, and eventually forfeited consists not only of the proceeds of the bank fraud charged in Count 2 of the superseding indictment, but also the Cayman Island bank accounts used to facilitate the laundering of the proceeds as charged in Counts 7 and 8 of the superseding indictment;

(3) The Government is entitled to seek forfeiture of this property pursuant to 18 U.S.C. § 982, which incorporates the provisions of 21 U.S.C. § 853 in 18 U.S.C.

---

### ORDER AND REASONS

McNAMARA, District Judge.

On January 14, 1994, this court issued an Order restraining all assets (funds) of the Defendants, W. Harold Sellers, Robert Dupre and Michael J. Barrack, currently on deposit in the Canadian Imperial Bank of Commerce, Georgetown, Grand Cayman, British West Indies in the following accounts: Seventy One Company, Thirty Five Company, Twenty Two Company, 121 Group, Ltd., 2122 Company, 322 Company and Newport

---

1. The court ordered Defendants to submit their briefs to the court on January 28, 1994, but Defendants Sellers and Barrack asked for an extension until February 4, 1994.

§ 982(b)(1)(A). In Count 9, the Government sets forth its criminal forfeiture allegations;

(4) The return of the indictment by the federal grand jury in this matter represents a determination of probable cause sufficient to issue a restraining order under 21 U.S.C. § 853(e)(1)(A), as "Congress intended for the indictment itself to constitute sufficient notice of the Government's intent to seek forfeiture." *United States v. Thier,* 801 F.2d 1463, 1468–69 (5th Cir.1986);

(5) In the criminal forfeiture statute, 18 U.S.C. § 982, "any property, real or personal, involved in [the listed] offense, *or any property traceable to such property*," is subject to forfeiture. 18 U.S.C. § 982(a)(1) (emphasis added);

(6) In *United States v. Banco Cafetero Panama,* 797 F.2d 1154 (2nd Cir.1986), the court dealt with the issue of bank accounts used to receive drug proceeds as well as other transactions. The court addressed the issue of commingling proceeds from criminal activity with legitimate funds and noted that Congress, in enacting the forfeiture statutes, "intended the forfeiture statutes to apply to a credit balance reflecting the cumulative results of deposits into and withdrawals from an account into which there are deposited proceeds from drug sales." *Id.* at 1159. The Second Circuit allowed the Government to elect to treat such an account in either of two ways: "drugs-in, last-out" or "drugs-in, first-out." *Id.* The Second Circuit explained:

> Where the credit in a depositor's account represents the net results of transactions that include a deposit of drug money, there is a plausible argument to be made *either* that the account contains the "traceable proceeds" of the tainted deposit (so long as the balance has not fallen below the amount of the tainted deposit) *or* that any withdrawal (in excess of the tainted deposit) contains the "traceable proceeds" of such a deposit.

> . . . .

> Obviously few cases will present facts that neatly match untainted deposits with withdrawals, and the real question therefore becomes which side bears the risk of the inevitable uncertainty that will arise in most cases. Congress has answered that question in the Government's favor by assigning it a lenient burden of proof in obtaining forfeiture of "traceable proceeds" of drug transactions.

*Id.* at 1159–60.

■ In the instant matter, 18 U.S.C. § 982(a)(1) also allows the forfeiture of "any property, real or personal, involved in [the listed] offense, *or any property traceable to such property.*" (emphasis added). Therefore, the court concludes that the same analysis (i.e., "drugs-in, last-out" or "drugs-in, first-out") can be applied to bank fraud and money laundering cases thus allowing the Government in this case to elect to treat the subject accounts in either of two ways: "proceeds-in, last-out" or "proceeds-in, first-out;"

■ (7) Because the Government has shown probable cause to believe that Defendants have deposited tainted money into the Cayman Island bank accounts (as evidenced by the Indictment in this matter), there is probable cause to believe that the subject bank accounts contain "traceable proceeds" of bank fraud and/or money laundering (if the balance has not fallen below the amount of the deposit) *and* there is probable cause to believe that a withdrawal contains such "traceable proceeds" (if the withdrawal exceeds the deposit). *Id.* at 1160–61. The burden is now on the Defendants to demonstrate that no portions of the account or no portions of the withdrawal, depending on which the Government pursues, are "traceable proceeds" of the alleged bank fraud-money laundering. *Id.* at 1161. Again, as the Second Circuit has explained:

> No doubt uncertainty caused by the fungibility of money will make it difficult and in many cases impossible for claimants to satisfy this burden. But it is precisely the function of burden of proof rules to determine which party loses where evidence is lacking or at best ambiguous. Under the Congressional scheme, the risk of uncertainty in determining the traceability of proceeds of drug sales is placed squarely on the claimant, once probable cause has been established. It would be inconsistent with this scheme to immunize from seizure

bank accounts or withdrawn funds as to which probable cause exists to believe that they are "traceable proceeds" of drug transactions.

*Id.*

■ (8) Under the analysis of "proceeds-in, last-out" or "proceeds-in, first-out", the court finds that restraints may be issued on the basis of the assets' connection to the alleged criminal enterprise rather than their status as substitute assets. *In re Assets of Martin,* 1 F.3d 1351 (3rd Cir.1993). In other words, the court finds a "nexus" between the relevant assets and the alleged violations, i.e., the court finds that such assets are 21 U.S.C. § 853(a) [2] property, rather than substitute assets within the meaning of 21 U.S.C. § 853(p).[3] *Id.* at 1361;

(9) In *United States v. Floyd,* 992 F.2d 498 (5th Cir.1993), the court held that the Government could not seek a pre-trial restraining order of "substitute assets." However, the instant restraining application does not seek restraint or protection of substitute assets but seeks proceeds of bank fraud, money laundering and property used to facilitate same. *Floyd* is also distinguishable from this case because in *Floyd* none of the assets which the Government attempted to restrain were derived from or connected to the defendant's alleged criminal activity. *Id.* at 499. However, in this matter, the assets which the Government seeks to restrain are clearly alleged to be connected to the Defendants' alleged criminal activity;

■ (10) Rule 65 requirements do not impair the court's power to refuse to "look behind" the Indictment. Nor do they act to require the Government to prove the merits of the underlying criminal case. What they do, and all that they do, is give the Defendants a constitutional opportunity to be heard in a meaningful way at a meaningful time before they are denied the present use of property which may or may not prove to be forfeitable. *Thier,* 801 F.2d at 1469.

Having considered the four elements traditionally required for the issuance of a preliminary injunction (i.e., (1) "a substantial likelihood that the Plaintiff will ultimately prevail on the merits of his claim;" (2) "the injunction must be necessary to prevent irreparable injury;" (3) "the threatened injury to the plaintiff must outweigh the harm the injunction might do to defendants;" and (4) "the entry of an injunction must be consistent with the public interest" *Id.* at 1470), the court finds that the Temporary Restraining Order now in effect should be converted, in part, to a Preliminary Injunction;

(11) This court is not free to question whether the Grand Jury should have acted as it did, but it is free, and indeed required, to exercise its discretion as to whether and to what extent to enjoin based on all matters subsequently developed. *Id.* As the Fifth Circuit has explained: "The grand jury's finding of probable cause that the defendant[s] should be tried for the crime and its determination that certain assets are potentially forfeitable constitute strong showings for injunctive relief, but they are not irrebuttable." *Id.*

While the court has concluded that a preliminary injunction should now be issued in this matter, the court will revisit the issuance of the preliminary injunction should Defendants rebut the grand jury's finding of probable cause. At this time, Defendants have failed to do so.

---

2. Section 853(a) states in pertinent part that:

**(a) Property subject to criminal forfeiture**

Any person convicted of a violation of this subchapter or subchapter II of this chapter are punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of state law—

(1) Any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation;

(2) Any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. . . .

3. Section 853(p) provides in pertinent part:

**(b) Forfeiture of substitute property**

If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant—

. . . .

. (5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant. . . .

(12) The court also finds that the Defendants should repatriate the contents of the subject accounts to the registry of this court as the court finds that the forced repatriation of these tainted assets does not violate the Fifth Amendment of the United States Constitution. The Government's application is a tool of preservation and not discovery. The Government does not intend to introduce any evidence of the repatriation of the funds and their concomitant deposit in the registry of the court in its case in chief. The Government simply wants to preserve those tainted assets for forfeiture at the conclusion of Trial. Accordingly;

IT IS ORDERED that the Temporary Restraining Order granted by this court on January 14, 1994, be and is hereby CONVERTED, in part, to a Preliminary Injunction ENJOINING the Defendants, W. Harold Sellers, Robert Dupre, and Michael J. Barrack, *and* anyone acting on their behalf, from transferring (*except to effect the repatriation of the funds as ordered in the following paragraph herein*), encumbering, hypothecating, spending, or in any way causing a diminution in value or amount of any money or funds which they have on deposit in the Canadian Imperial Bank of Commerce, Georgetown, Cayman Island, British West Indies in the following accounts: Seventy One Company, Thirty Five Company, Twenty Two Company, 121 Group, Ltd., 2122 Company, 322 Company and Newport Ltd.

IT IS FURTHER ORDERED that the Defendants repatriate all funds presently on deposit in the above identified accounts and deposit them in the registry of this court by *March 11, 1994*.

IT IS FURTHER ORDERED that Defendant Dupre's Motion to Dissolve or Limit Temporary Restraining Order presently set for hearing on March 2, 1993, be and is hereby DISMISSED as MOOT.

### ORDER GRANTING RECONSIDERATION IN PART

Before the court is Defendant Dupre's Motion for Reconsideration [of this court's order converting the temporary restraining order to a preliminary injunction]. Defendant Dupre argues that the court's order is violative of his Fifth Amendment right against self-incrimination. The Government filed a response memorandum. The motion, set for hearing on Wednesday, March 16, 1994, is before the court on written briefs without oral argument.

Having considered the memoranda of counsel and the applicable law, the court finds that preliminary injunction ordering Defendant to repatriate the subject funds is designed to protect forfeitable assets from irreparable loss, and is not designed to have the Defendant testify against himself. However, while the Government has repeatedly represented to this court that it will not use this repatriation to incriminate the Defendant in any criminal proceeding (including its case in chief in this matter), Defendant argues that this representation does not preserve his Fifth Amendment privileges. The Government now responds that it "is prepared to enter into a pre-trial order acknowledging its limitation on using the [repatriation] evidence." (*See* Government's Response Memorandum, Rec.Doc. No. 133, p. 4.) Accordingly;

IT IS ORDERED that Defendant Dupre's Motion for Reconsideration be and is hereby DENIED to the extent that it seeks the court to set aside the preliminary injunction ordering Defendant to repatriate the subject funds; however,

IT IS FURTHER ORDER that Defendant Dupre's Motion for Reconsideration be and is hereby GRANTED only to the extent that the court addresses Fifth Amendment concerns by ORDERING the Government to LIMIT its use of the evidence, related to the repatriation of the subject funds by any and all of the Defendants (Dupre, Sellers, and Barrack), to potentially future proceedings, if any, related to the criminal forfeiture of these funds.